

**SO ORDERED.**

**SIGNED this 18 day of September, 2007.**

```
                                    _____
                                         JAMES D. WALKER, JR.
                                    UNITED STATES BANKRUPTCY JUDGE
```
_____

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | CASE NO. 06-50508-JDW |
| AMRON TECHNOLOGIES, INC., | ) | |
| | ) | |
| DEBTOR. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

COUNSEL

For Donna LeGrand:   Jason M. Orenstein
                     Post Office Box 4086
                     Macon, Georgia 31208-4086

For Trustee:         Blake Lisenby
                     Post Office Box 229
                     Macon, Georgia 31202

**MEMORANDUM OPINION**

This matter comes before the Court on Donna G. LeGrand's motion to determine claim amount.  This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(B).  After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

**Findings of Fact**

On March 30, 2006, Debtor Amron Technologies, Inc. became the subject of an involuntary bankruptcy petition.  On April 20, 2006, the Court entered an order for relief under Chapter 7.  The Chapter 7 Trustee initiated an adversary proceeding against Donna G. LeGrand and related creditors to determine the validity and extent of a security interest they claimed in substantially all Debtor's assets.  After a trial, the Court entered an opinion and order on March 22, 2007, determining Ms. LeGrand held a perfected secured claim for the full value of a note executed by Debtor.  In granting judgment to Ms. LeGrand, the Court specifically referenced the principal and interest due under the note, but made no mention of attorney fees.

On July 10, 2007, Ms. LeGrand filed a motion to determine claim amount in which she asked the Court to determine whether she is entitled to recover attorney fees of $4,748.52 as part of her secured claim.  During a hearing on the motion on August 21, 2007, the parties stipulated Ms. LeGrand was an oversecured creditor, the note provided for payment of attorney fees, all attorney fees were incurred post-petition, the fees were limited to time actually spent protecting the security interest, and Ms. LeGrand never sent Debtor a demand for payment indicating her

intent to collect attorney fees and advising Debtor that the fees could be avoided by payment of the debt in full within 10 days of the notice.

For the following reasons, the Court finds Ms. LeGrand's secured claim includes post-petition attorney fees incurred in protecting and enforcing her claim.

## Conclusions of Law

At issue in this case is the extent of an oversecured creditor's secured claim. Section § 502(a) of the Bankruptcy Code provides that in the absence of an objection, a claim is deemed allowed if the creditor files a proof of claim. When an objection is raised, the Court may disallow a claim to the extent it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]" 11 U.S.C. § 502(b)(1). When a creditor with "an allowed secured claim" is oversecured, 506(b) provides "there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." Id. § 506(b).

Pursuant to Georgia Code § 13-1-11, if a note provides for payment of attorney fees, those fees may be collected as part of the debt if

> such note ... is collected by or through an attorney after maturity, subject to the following provisions:
> ...
> (3) The holder of the note ... or his attorney at law shall, after maturity of the obligation, notify in writing the maker, endorser, or party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, endorser, or party sought to be held on said obligation has ten days from the receipt of such notice to pay the principal and interest without the attorney's fees. If the maker, endorser, or party sought

3

> to be held on any such obligation shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement.

O.C.G.A. § 13-1-11(a)(3).  The notice described in this section is commonly called a 10-day letter.

The Trustee argues that because Ms. LeGrand never sent a 10-day letter, her claim for attorney fees is unenforceable under state law and, consequently, she is not entitled to recover attorney fees as part of her secured claim.  However, the language of the Bankruptcy Code and the relevant case law suggest otherwise.

In the absence of ambiguity, the Court must apply the plain language of the Bankruptcy Code unless doing so would lead to an absurd result.  Lamie v. U.S. Trustee, 540 U.S. 526, 534, 124 S. Ct. 1023, 1030 (2004) (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, 530 U.S. 1, 6, 120 S. Ct. 1942, 1947 (2000)).  Pursuant to § 506(b), to the extent an "allowed secured claim" is oversecured, the holder of the claim "shall be allowed ... any reasonable fees" provided for in the agreement giving rise to the claim.  In Welzel v. Advocate Realty Investments, LLC (In re Welzel), 275 F.3d 1308 (11th Cir. 2001), the Eleventh Circuit Court of Appeals stated "the language of 11 U.S.C. § 506(b) ... is not ambiguous." Id. at 1314.  See also U.S. v. Ron Pair Enter., Inc., 489 U.S. 235, 241, 109 S. Ct. 1026, 1030(1989).

At issue in Welzel was whether attorney fees claimed by an oversecured creditor pursuant to § 506(b) were subject to review for reasonableness.  Id. at 1311.  The court held they were.  Id. at 1315.  Only those fees determined to be reasonable could be included in the secured claim.  Id. However, any portion of the fees deemed unreasonable could still be collected as an unsecured

4

claim if allowable under § 502. Id. at 1318.

Initially, the court considered whether § 506(b) applies to fees vested pre-petition. The court noted that the statute makes no distinction between pre- or post-petition fees. Instead, "in the oversecured creditor context, § 506(b) applies a reasonableness standard across-the-board to all contractually set attorney's fees." Id. at 1315. Next, the court considered the impact of state law. Enforceability of the fees under state law in no way relates to the reasonableness of those fees under bankruptcy law. Id. Thus, enforceability under state law neither precludes application of the reasonableness requirement nor proves reasonableness. However, the court did not stop there. In continuing its analysis, it stated a claim must first be allowed under § 502 before § 506 is applied to determine whether and to what extent it is secured. Id. at 1317-18. See also Clark v. Washington Mut. Home Loans (In re Clark), 299 B.R. 694, 699-700 (Bankr. S.D. Ga. 2003). The fees in Welzel were earned pre-petition and were fully vested via compliance with O.C.G.A. § 13-1-11 pre-petition. Thus, neither the facts nor issue in Welzel is directly on point.

The question, then, is whether post-petition attorney fees should follow the same path set out in Welzel for pre-petition attorney fees. If so, they must first pass through § 502, which allows only claims enforceable under applicable law. According to the Trustee's argument, Ms. LeGrand's claim for attorney fees must be disallowed because she never sent the 10-day notice. If the claim is disallowed, the analysis ends, and § 506 never enters the picture. However, the Trustee's argument is inconsistent with the Supreme Court's decision in Ron Pair.

In Ron Pair, the United States was an oversecured creditor protected by a nonconsenual tax lien. Its proof of claim included pre-petition interest. The debtor's Chapter 11 plan made no provision for post-petition interest. The U.S. objected, seeking post-petition interest pursuant to

5

§ 506(b). 489 U.S. at 237, 109 S. Ct. at 1028. At the time of the case, courts were split about whether nonconsenual lienholders were entitled to interest under § 506(b) or whether such interest was limited to consensual creditors. The Court said a "natural reading" of § 506(b)

> entitles the holder of an oversecured claim to postpetition interest and, in addition, gives one having a secured claim created pursuant to an agreement the right to reasonable fees, costs, and charges provided for in that agreement. Recovery of postpetition interest is unqualified. Recovery of fees, costs, and charges, however, is allowed only if they are reasonable and provided for in the agreement under which the claim arose.

Id. at 242, 109 S. Ct. at 1030. The Court gave no indication that the availability of post-petition interest is in any way affected by its enforceability under state law. The same is true of post-petition attorney fees. As the Court stated, the difference between attorney fees and interest is restrictions imposed by Congress–not restrictions imposed by state law. See id. While post-petition interest is available to all oversecured creditors without limitation, post-petition attorney fees are available only in a reasonable amount and if provided for by contract or state law. Id.

Although Ron Pair does not directly address the question before this Court, two circuit courts have allowed oversecured creditors to include in their claims post-petition attorney fees that were not enforceable under state law. In First Western Bank & Trust v. Drewes (In re Drewes), 104 F.3d 200 (8th Cir. 1997), state law expressly voided the contractual attorney fees provision on which the creditor relied for its claim. Id. at 201. The court framed the issue as whether state law could trump bankruptcy law with regard to allowance of attorney fees to an oversecured creditor. Id. at 201-02. While noting that property interests generally are determined by nonbankruptcy law, the court said, "Here, the plain language of section 506(b) expressly provides for the award of attorney's fees in bankruptcy proceedings, without reference

6

to contrary state law." Id. at 202.

The court found its interpretation bolstered by the legislative history of § 506(b). Id. When Congress overhauled the bankruptcy laws in 1978,[1] it rejected proposed language in § 506(b) that would have entitled oversecured creditors to reasonable attorney fees "'to the extent collectible under applicable law.'" Id. (quoting H.R. 8200, 95 Cong., 1st Sess. § 506(b) (1977)). A report by floor managers of the legislation, Representative Edwards and Senator DeConcini, reinforced that rejection of nonbankruptcy law by stating, "'If the security agreement between the parties provides for attorneys' fees, it will be enforceable under title 11, notwithstanding contrary law ....'" Id. (quoting 124 Cong. Rec. 32,398, 33,997 (1978)) (emphasis added).

Relying on the plain language in conjunction with the legislative history, the court found "the clearly intended effect of section 506(b)" was "that a fee provision unenforceable under state law would be given effect in bankruptcy proceedings[.]" Id. at 203.

The Fourth Circuit Court of Appeals reached a similar conclusion in Unsecured Creditors' Committee v. Walter E. Heller Company Southeast, Inc. (In re K.H. Stephenson Supply Company), 768 F.2d 580 (4th Cir. 1985). In Stephenson Supply, the oversecured creditor failed to comply with a state notice provision similar to Georgia's 10-day notice requirement when it sought fees for services provided during the bankruptcy case. Id. at 581-82. In considering the issue, the court relied almost entirely on the legislative history of § 506(b). To summarize its findings: prior to 1978, allowability of attorneys fees was dependant upon their enforceability under state law. In 1978, Congress enacted substantial bankruptcy reform legislation. In the course of drafting the law, the House proposed a bill allowing fees if

---

[1] Bankruptcy Reform Act of 1978, Pub. L. No. 95-598 (1978).

7

collectible under state law. The Senate proposed a bill that allowed attorney fees without reference to state law. Reports accompanying both bills claimed they were codifying existing law. The House ultimately agreed to the Senate version of the bill, which is substantially the same as the current version of § 506(b). Id. at 583-85. The court concluded the "explicit rejection" of language referring to state law was "a clear indication ... Congress intended that state law should no longer govern the enforceability of attorney's fee agreements." Id. at 585. Consequently, the court held the creditor was entitled to post-petition attorney fees as part of its secured claim, notwithstanding its failure to comply with state law. Id.

In a district court case, the trustee argued against allowing attorney fees under § 506(b) on the ground that the validity of the "lien" for attorney fees must be determined by state law. ITT Ind. Credit Co. v. Scarboro (In re Scarboro), 13 B.R. 439, 442 (M.D. Ga. 1981). The creditor's lien was not valid, the trustee contended, because the creditor never provided the debtor with Georgia's 10-day notice letter. Id. The court partially agreed, stating that construction of contracts has generally been the domain of state law while enforceability has been determined by bankruptcy law. Id. However, the legislative history of § 506(b) demonstrates congressional intent to "treat clauses concerning attorneys' fees differently." Id. Citing the floor report by Rep. Edwards and Sen. DeConcini (see supra p.7), which declared a contractual provision for attorney fees would be enforceable "notwithstanding contrary law," the court held the creditor was entitled to attorney fees even though it had failed to send the 10-day notice. Id.

The Drewes, Stephenson Supply, and Scarboro cases all rely to varying degrees on legislative history, which is of limited value when the language of the statute is clear. Here, the language is clear and the legislative history only serves to reinforce the plain meaning. In the

case of an oversecured creditor, § 506(b) allows attorney fees provided by contract to be added onto the secured claim to the extent they are reasonable. The statute requires that the fees be provided for by contract and that they be reasonable; it does not require them to be enforceable under state law. While Welzel may require pre-petition fees to pass through the allowance process of § 502–along with the other pre-petition elements of the claim–it imposes no such burden on post-petition fees.

The Trustee cited two cases in support of his view that Ms. LeGrand is not entitled to attorney fees. First, in Curtis v. Pilgrim Health and Life Insurance Co. (In re Curtis), 83 B.R. 853 (Bankr. S.D. Ga. 1988), the creditor had sent the 10-day notice and the 10 days had passed without full payment of the debt prior to the bankruptcy filing. Id. at 855. The issue–as in Welzel–was whether the amount of attorney fees sought by the creditor was subject to a determination of reasonableness. Id. at 859. The court's decision offers no opinion on whether the fees must be enforceable under state law in addition to being reasonable. Therefore, it is unhelpful to this case.

Second, the Trustee cited American Express Travel Related Services, Inc. v. Jawish (In re Jawish), 260 B.R. 564 (Bankr. M.D. Ga. 2000) (Walker, J.). In that case, an unsecured creditor filed an adversary proceeding to determine the dischargeability of its debt. As part of its judgment, it sought an award of attorney fees pursuant to its credit agreement with the debtor. Id. at 566-67. The court declined to award fees because the creditor had not sent the 10-day notice to the debtor and was, thus, not entitled to attorney fees under Georgia law. Id. at 570. Section 506(b) was not implicated in Jawish. The creditor was unsecured and was seeking attorney fees as a successful party in an adversary proceeding, not as part of an oversecured claim. Id. at 566-

9

67. Consequently, the case is irrelevant to the issue at hand.

After considering the language of § 506(b) and the relevant case law interpreting the statute, the court holds that–notwithstanding contrary nonbankruptcy law–a secured creditor is entitled to add post-petition attorney fees to its secured claim if (1) the creditor is oversecured; (2) the fees are reasonable; and (3) the fees are provided for in the agreement or state statute under which the claim arose. Furthermore, the creditor may only receive fees to the extent it is oversecured.

In this case, Ms. LeGrand is an oversecured creditor. All the attorney fees at issue were incurred post-petition in an effort to protect and enforce her claim. The fees were provided for in the security agreement underlying Ms. LeGrand's claim, and they comprise only actual time spent by Ms. LeGrand's counsel. The Trustee has not argued that any of this time is unreasonable, nor is there any evidence it is unreasonable. Because the attorney fees at issue meet the requirements set forth in § 506(b), the Court concludes they are part of Ms. LeGrand's secured claim.

An Order in accordance with this Opinion will be entered on this date.

END OF DOCUMENT